**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Citizens Alliance of North Dakota et al., | |
| Plaintiffs, | |
| vs. | Case No. 1:25-cv-00256 |
| Drew Wrigley or his successor, in his official capacity as Attorney General of North Dakota et al., | |
| Defendants. | |

**ORDER GRANTING GENERAL WRIGLEY'S AND ETHICS
COMMISSION DEFENDANTS' MOTIONS TO DISMISS AND
DENYING STATE'S ATTORNEY LAWYER'S MOTION TO DISMISS**

[¶ 1]    THIS MATTER comes before the Court on three Motions to Dismiss for Lack of Jurisdiction filed by Defendants North Dakota Attorney General Drew Wrigley ("General Wrigley") on November 28, 2025, Burleigh County State's Attorney Julie Lawyer ("State's Attorney Lawyer") on December 4, 2025, and Rebecca Binstock ("Director Binstock") and the North Dakota Ethics Commission ("Ethics Commission") (collectively, "Ethics Commission Defendants") on January 9, 2026. Doc. Nos. 11, 13, 19. Plaintiffs Citizens Alliance of North Dakota ("Citizens Alliance") and Brandon Prichard ("Prichard") filed a consolidated Response on January 30, 2026. Doc. No. 21. Defendants filed their Replies on February 12, 2026. Doc. Nos. 23–25. For the reasons set forth below, General Wrigley's and the Ethics Commission Defendants' Motions to Dismiss are **GRANTED** and State's Attorney Lawyer's Motion to Dismiss is **DENIED**.

- 1 -

## BACKGROUND

[¶ 2]    This case involves a challenge to a North Dakota law that makes it illegal to publish false information in political advertisements if done so "knowingly, or with reckless disregard for its truth or falsity." N.D.C.C. § 16.1-10-04(1). If a person violates this statute, they are guilty of a class A misdemeanor punishable by up to 360 days of imprisonment, a fine of up to $3,000, or both. See id.; id. § 12.1-32-01(5). Organizations that violate this statute may be fined up to $30,000. id. § 12.1-32-01.1.

[¶ 3]    Prichard—a former North Dakota State Representative—is the founder and executive director of Citizens Alliance. Doc. No. 1, ¶ 10. Citizens Alliance is a political organization in Bismarck, North Dakota. Id. ¶ 9. A significant function of Citizens Alliance is to run political ads either in support of or against political candidates, ballot measures, or proposals. Id. It uses various media to engage in this speech: writings, text messages, social media, audio, and video messaging. Id. As executive director of Citizens Alliance, Prichard frequently engages in similar political speech. Id. ¶ 10.

[¶ 4]    General Wrigley is the Attorney General of North Dakota. Id. ¶ 11. He has statutory authority to enforce and defend the criminal laws of North Dakota. See N.D.C.C. § 54-12-01(5) ("The attorney general shall . . . [a]ttend the trial of any party accused of crime and assist in the prosecution when in the attorney general's judgment the interests of the state require it.").

[¶ 5]    State's Attorney Lawyer is the Burleigh County State's Attorney. Doc. No. 1, ¶ 12. As state's attorney, it is her duty to "[a]ttend the district court and conduct on behalf of the state all prosecutions for public offenses." N.D.C.C. § 11-16-01(1)(a). She may also hire an investigator to help secure evidence and investigate criminal cases. Id. § 11-16-10 ("The state's attorney may incur expenses in securing evidence and investigating criminal cases, so far as is necessary, to the

amount annually appropriated by the board of county commissioners to the state's attorney's contingent fund."). In accordance with this, she hired Rob Fontenot ("Investigator Fontenot") as an investigator for the Burleigh County State's Attorney's Office.[1] See Doc. No. 1-1. The Burleigh County State's Attorney's Office previously prosecuted at least one alleged violation of N.D.C.C. § 16.1-10-04 in June 2018. Doc. No. 1-4. At that time, a prosecutor with what is now State's Attorney Lawyer's Office said the charge was filed "because her office believes 'that the acts fit the elements of the offense.'" Id. at 2.

[¶ 6]    The North Dakota Ethics Commission was created within North Dakota's Constitution. N.D. Const. Art. XIV; see also Doc. No. 1, ¶ 13. When the Ethics Commission receives a complaint alleging a criminal violation, it "may refer the matter to [an] appropriate law enforcement agency." N.D.C.C. § 54-66-05(4); see also id. § 54-66-08 ("If the commission believes a complaint contains allegations of criminal conduct, the matter may be coordinated with the appropriate law enforcement agency with jurisdiction over the offense."). The Ethics Commission may also investigate complaints brought to it. Id. § 54-66-08. Director Binstock is the Ethics Commission's executive director and has "the authority to receive and review all complaints made to the North Dakota Ethics Commission." Doc. No. 20-1.

[¶ 7]    Plaintiffs allege they were subject to enforcement of this statute by the Defendants relating to various instances of political speech from 2023 to 2025. The first incidents were complaints brought to the Commission. In 2023, a complaint was made relating to Prichard's self-description as a "student of law" when he was not enrolled in law school. Doc. No. 1, ¶¶ 32–41. In 2024, two

---

[1] The Complaint incorrectly indicates Investigator Fontenot worked for the Attorney General's Bureau of Criminal Investigation; Investigator Fontenot's own representation is that he was with the State's Attorney's Office. Compare Doc. No. 1, ¶ 46 with id. ¶ 48 and Doc. No. 1-1.

complaints were made alleging Plaintiffs violated N.D.C.C. § 16.1-10-04. Id. ¶¶ 42–44. The complaints were summarily dismissed by the Commission. Id. ¶ 44.

[¶ 8]   The final incident[2] occurred in November 2024 when Investigator Fontenot contacted Prichard's wife. Fontenot investigated Plaintiffs for violations of North Dakota's Corrupt Practices Act and Conspiracy to Commit Corrupt Practices (N.D.C.C. §§ 16.1-10-04, 12.1-06-04). Doc. No. 1-1, p. 33. During the course of the investigation, he made several comments relevant here:

1. "Brandon and Katie. This is Rob from the states attorneys office. As you both know by now I'm conducting a criminal investigation which involves both of you." Doc. No. 1-1, p. 1.

2. In response to Prichard's wife asking which law they allegedly violated, "You wanna talk call me I'm not emailing you. Brandon is well aware of the law but now there is an additional law that's been violated." Id. at 2.

3. "The violations are the corrupt practices act and conspiracy to commit corrupt practices. Both are A misdemeanors." Id. at 3.

Investigator Fontenot further stated, in response to a request for clarification on the charges from Prichard's wife:

> Katie, the complaint was initiated by a concerned citizen to the best of my knowledge and the conspiracy is a separate criminal charge in chapter 12 of the century code. The main thing that is being investigated is that you and Brandon used someone else to spread non fact-based statements about a candidate for office and it wasn't unintentional because the text messages that both you and Brandon

---

[2] Plaintiff alleges North Dakota state representative Jeremy Olson resigned from office after Prichard publicized allegations Olson committed sexual assault against a legislative page. Doc. No. 1, ¶ 55. Plaintiffs also allege they received a cease-and-desist letter from the Kelsch Ruff Kranda Nagle & Ludwig law firm on behalf of Jason Dockter after Citizens Alliance published a billboard stating "Rep. Jason Dockter stole your money." Doc. No. 1, ¶¶ 56–57. The letter threatened legal action pursuant to N.D.C.C. § 16.1-10-04. Id. ¶ 57. These individuals are not parties to this case and there is nothing in the record to suggest any legal action was brought by them against the Plaintiffs. Therefore, the Court may not act on these allegations.

sent in regards to whether a person should talk to investigators about it shows me that this is a calculated and deliberate action and is indeed a crime. **I have no real interest in bantering back and forth about this you can either talk to me or not but this event warrants charges unless you can show me otherwise**.

Doc. No. 1-2, p. 2 (emphasis added). Ultimately, no charges were brought against Plaintiffs. Doc. No. 15, ¶¶ 3–4.

[¶ 9]    The Defendants have submitted declarations into the record. General Wrigley states his "Office has never initiated a prosecution alleging a violation of N.D.C.C. § 16.1-10-04." Doc. No. 12-1, ¶ 3. He further asserts his Office has no intention to enforce § 16.1-10-04 against Plaintiffs for any of the statements or activities alleged in the Complaint or for any of the content they "wish to engage in." Id. at ¶ 4.

[¶ 10]   State's Attorney Lawyer states her awareness of the communications between Investigator Fontenot and Prichard's wife but that she declined to prosecute Plaintiffs and Prichard's wife prior to this lawsuit. Doc. No. 15, ¶ 3. She further states, "[n]either I nor anyone in my office has any intention of initiating a prosecution and I am unwilling to exercise my ability to prosecute a claim against Plaintiffs under N.D.C.C. § 16.1-10-04 for any statements or activities that the Complaint alleges the Plaintiffs have engaged or [wish] to engage." Doc. No. 15, ¶ 4.

[¶ 11]   As for the Ethics Commission Defendants, Director Binstock submitted a declaration stating both she and the Commission have no "intention of pursuing any allegation of a violation of N.D.C.C. § 16.1-10-04." Doc. No. 20-1, ¶ 3. She further provides neither she nor the Commission intend to refer complaints relating to violations of N.D.C.C. § 16.1-10-04 to law enforcement. Id. ¶ 4.

**DISCUSSION**

### I.    Sovereign Immunity

[¶ 12]  The first issue in this case is whether the Defendants have sovereign immunity against Plaintiffs' claims.[3] Plaintiffs contend the Defendants are proper under Ex parte Young and they should not be afforded Eleventh Amendment immunity. Plaintiffs advance several arguments why this Court should deny the Defendants the protection of Eleventh Amendment Immunity. First, they claim because the facts are fixed at the time the Complaint was filed, Defendants cannot come in after the fact with affidavits disavowing their potential enforcement of the challenged statute. Plaintiffs next argue voluntary cessation doctrine proves Defendants cannot claim sovereign immunity simply by disavowing their illegal investigations. Plaintiffs argue they could be subject to future prosecutions for violations of N.D.C.C. § 16.1-10-04. Finally, as it relates to the Ex parte Young doctrine, Plaintiffs claim there is a Circuit split between the Eighth and Ninth Circuits. All defendants argue they are entitled to sovereign immunity under the Eleventh Amendment because they have expressly disavowed any intent to enforce the challenged statute against the Plaintiffs.

[¶ 13]  Where, as here, defendants make a factual attack on a court's subject matter jurisdiction, courts consider matters outside the pleadings. Minn. Ch. of Associated Builders & Contractors v. Ellison, 153 F.4th 695, 698 (8th Cir. 2025) ("Minnesota Chapter"). In factual attacks on the Court's jurisdiction, courts look outside the record to determine jurisdictional facts, which must be

---

[3] General Wrigley argues he is not a proper Defendant in this case because neither he nor his office were involved with any enforcement of N.D.C.C. § 16.1-10-04 against Plaintiffs. The Court need not resolve whether this precludes his presence in this lawsuit because, as discussed below, his affidavit clearly establishes he would be entitled to Eleventh Amendment sovereign immunity. The Commission Defendants argue they are not proper parties to this lawsuit because a state agency is not amenable to suit under 28 U.S.C. § 1983 pursuant to Will v. Mich. Dept. of State Police, 491 U.S. 58, 64 (1989). Again, the Court does not need to reach this question because Binstock's affidavit clearly establishes that, assuming the Commission Defendants are amenable to suit, they are entitled to Eleventh Amendment immunity.

established by a preponderance of the evidence. Id. at 701. Plaintiffs do not get the benefit of their pleadings being accepted as true. Id. at 698.

[¶ 14]  The Eleventh Amendment gives states sovereign immunity from suit. Id. Ex parte Young provides a narrow exception to this grant of sovereign immunity when the relief stops "state executive officials from enforcing state laws that are contrary to federal law." Id. (quoting Whole Woman's Health v. Jackson, 484 U.S. 30, 39 (2021)). To be a proper Ex parte Young defendant, there is a two-part test: (1) whether the official has a sufficient connection to the enforcement of the law in question and (2) whether there has been a threated enforcement and such enforcement is about to begin. Id. Defendants may be brought outside of the Ex parte Young exception if they establish an "unwillingness to exercise [their] ability to prosecute a claim." 281 Care Comm. v. Arneson, 766 F.3d 774, 797 (8th Cir. 2014) ("Care Committee II"). If the statements make such a showing, there is no further threat of an unconstitutional enforcement of the challenged law. Id.

[¶ 15] As to Plaintiffs' claims against General Wrigley, Director Binstock, and the Ethics Commission, this Court is bound by a lineage of cases declaring states and their agencies are entitled to Eleventh Amendment immunity when the state actor submits an affidavit disavowing any prosecution of the law challenged as unconstitutional. Minn. Ch. of Associated Builders & Contractors v. Ellison, 153 F.4th 695, 698 (8th Cir. 2025) (holding the Minnesota Attorney General was entitled to Eleventh Amendment immunity because he filed a declaration stating he had no present intent to enforce the challenged statute against the plaintiffs); Minnesota RFL Republican Farmer Labor Caucus v. Freeman, 33 F.4th 985, 987 (8th Cir. 2022) (granting Eleventh Amendment immunity to defendants who submitted affidavits stating "they never have initiated civil or criminal proceedings for violations of [the statute], that they are 'not currently investigating' any such violations, and that they have 'no personal intention' to commence

proceedings"); Care Committee II, 766 F.3d at 797 (holding the Minnesota Attorney General was entitled to immunity because his declaration showed an "unwillingness to exercise his ability to prosecute a claim").

[¶ 16]  This Court cannot ignore binding Eighth Circuit precedent. Hood v. United States, 342 F.3d 861, 864 (8th Cir. 2003) ("The District Court, however, is bound, as we are, to apply the precedent of this Circuit."). These Defendants have submitted uncontroverted declarations disavowing any prosecution of the contested law against the Defendants which show by a preponderance of the evidence that they have neither threatened nor are about to commence enforcement proceedings against the Plaintiffs. See 281 Care Comm. v. Arneson, 638 F.3d 621, 631–33 (8th Cir. 2011) ("Care Committee I"). General Wrigley has stated his office has never prosecuted such a violation and does not intend to now. For the Ethics Commission Defendants, the record reflects they have received complaints about Prichard violating N.D.C.C. § 16.1-10-04; however, the record also establishes (1) the complaints have been summarily dismissed; (2) the Ethics Commission has a policy directing summary dismissal of complaints based upon N.D.C.C. § 16.1-10-04; and (3) they have no intent on investigating or referring to law enforcement any complaints based upon the challenged statute. Based upon this, General Wrigley, Director Binstock, and the Ethics Commission are entitled to Eleventh Amendment immunity.

[¶ 17]  The same, however, cannot be said of Plaintiffs' claims against State's Attorney Lawyer. At this early stage in the litigation, the Court cannot conclude by a preponderance of the evidence that State's Attorney Lawyer's unsworn declaration carries the day. There are three key distinguishing facts that make this case unique from Minnesota Chapter, Minnesota RFL, and Care Committee II. None of those cases involved a state official whose office (1) actively investigated the plaintiffs for a violation of the challenged statute; (2) threatened the plaintiffs with charges;

and (3) had a history of enforcing the challenged statute against other politicians for their political speech.

[¶ 18] Yet all three of these factors are present here. The Plaintiffs were under an active investigation by State's Attorney Lawyer's Office. Investigator Fontenot made several statements relating to bringing criminal charges against the Plaintiffs that amounted to threatening them with prosecution. The Burleigh County State's Attorney's Office also had at least one prior prosecution for a violation of N.D.C.C. § 16.1-10-04. Therefore, at this early stage in the litigation, without a complete record, the Court cannot conclude by a preponderance of the evidence that State's Attorney Lawyer's unsworn declaration is sufficient to show her office will not commence proceedings against the Plaintiffs imminently. State's Attorney Lawyer's unsworn declaration at this time cannot be read outside this important context. Accordingly, given the history of the Burleigh County State's Attorney's Office with the challenged law, the investigation of the Plaintiffs, and the threats of prosecution made during the course of the investigation, the Court is not convinced by a preponderance of the evidence that State's Attorney Lawyer will not imminently prosecute the Plaintiffs if their claims against her are dismissed.

[¶ 19] Furthermore, the Eighth Circuit's application of Ex parte Young and its imminence requirement should not be limited to strictly looking to an affidavit from the state official.[4] In the

---

[4] To the imminence requirement in the Eighth Circuit, this Court believes the Ninth Circuit's method is the better approach. In National Audubon Society, Inc. v. Davis, the Ninth Circuit "decline[d] to read additional 'ripeness' or 'imminence' requirements into the Ex parte Young exception to Eleventh Amendment immunity in actions for declaratory relief beyond those already imposed by a general Article III and prudential ripeness analysis." 307 F.3d 835, 847 (9th Cir. 2002). This Court finds it telling the Defendants each rest on sovereign immunity by disavowing any investigation or enforcement of N.D.C.C. § 16.1-10-04(1) against the Plaintiffs. By doing so, the Defendants attempt to evade review of a constitutionally tenuous statute in North Dakota that criminalizes certain political speech. If the Eighth Circuit were to follow the Ninth Circuit and eliminate its strict imminence requirement for Eleventh Amendment immunity analysis, the state defendants would not be able to play games with the Eighth Circuit's "get out of jail free card" to

lineage of cases relied upon by the Defendnats, the Eighth Circuit has not considered whether an ongoing violation has occurred in the specific context of this case. However, it appears the Eighth Circuit may view the violation as consisting of only the official's actions and intent at the specific moment in litigation. See id. at 699 (finding a disavowal of future prosecutions is not detrimental to sovereign immunity under Ex parte Young); see also Minnesota RFL, 33 F.4th at 989 – 991 (discussing the "ongoing violation" requirement). In other words, without actual or threatened, realized or imminent official enforcement of the challenged statute, there is no "ongoing violation." See id. at 698 ("To be a proper Ex parte Young defendant, the official must have 'some connection with the enforcement' of the challenged law and 'threaten and [be] about to commence proceedings.'") (quoting Ex parte Young, 209 U.S. at 156–57)); see also Minnesota RFL, 33 F.4th at 989–91.

[¶ 20]  This case shows exactly why this reasoning is flawed. Here, State's Attorney Lawyer's office took actual steps to investigate Plaintiffs. But what is worse is her investigator made actual threats of prosecution to Plaintiffs through Prichard's wife. Not only that, but the record shows the State's Attorney's office has prosecuted cases under this statute in the past. All of this goes to show that even assuming State's Attorney Lawyer's unsworn declaration is accurate, the "ongoing violation" is not her decision to prosecute or not. Rather, it is the presence of the unconstitutional statute itself on North Dakota's books that creates the ongoing violation. Here, there is a prosecutor whose office is known to enforce this statute, the statute remains in force, and if she is given sovereign immunity without review of the potentially unconstitutional statute, Plaintiffs'

---

avoid constitutional scrutiny of their dubious laws. Care Committee II, 766 F.3d at 774 (striking a Minnesota law that is substantially similar to North Dakota's as unconstitutional). The North Dakota Century Code should not be filled with constitutionally-failing dead letter. Perhaps the State should reconsider this statute in light of Care Committee II.

constitutional rights to free speech are the victim of threatened State action. This would reasonably chill anyone's speech. But viewing the "ongoing violation" as this Court does allows for challenges under the unique circumstances of this case to proceed.

[¶ 21]   Furthermore, a reasonable interpretation of Care Committee I and the subsequent cases suggests that as long as a state defendant files an affidavit disavowing prosecution, they are free to investigate and harass people for exercising their rights without allowing those same people to challenge the underlying statute's constitutionality. For example, under State's Attorney Lawyer's reasoning, she could have initiated actual criminal prosecution against Plaintiffs. But if she moved to dismiss the criminal charges and submitted an affidavit in the lawsuit disavowing present prosecution, she would be immune from this lawsuit. See Minnesota RFL, 33 F.4th at 992 ("The proper standard in assessing their entitlement to such immunity is whether the county attorneys' affidavits establish their 'unwillingness to exercise [their] ability to prosecute a § 211B.0[2] claim against Appellants.'" (quoting Care Committee II, 766 F.3d at 797)). This is an absurd result. States should not be able to harass citizens with constitutionally suspect laws and, at the same time, shield that law from judicial review.

[¶ 22]   Based upon the foregoing, General Wrigley, Director Binstock, and the Ethics Commission are entitled to Eleventh Amendment sovereign immunity, whereas State's Attorney Lawyer is not.

##   II.   Standing

[¶ 23]   State's Attorney Lawyer also argues, relying on Minnesota Chapter, that the Court lacks standing because she filed an affidavit disavowing enforcement against the Plaintiffs. See Minnesota Chapter, 153 F.4th at 701-02 ("The Attorney General's declaration attests to having 'no present intention to commence' enforcement, so MNABC lacks standing to sue, divesting the district court of subject matter jurisdiction.").

[¶ 24]   To establish standing requires a three-fold showing by the plaintiff "(1) that he suffered a concrete, particularized injury in fact; (2) that this injury is fairly traceable to the challenged action of defendants; and (3) that it is likely that this injury will be redressed by a favorable decision." Care Committee I, 638 F.3d at 627. When dealing with a First Amendment claim, neither a threat of nor actual prosecution is necessary. Id. "Rather, the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." Id. Objectively reasonable self-censorship is a form of cognizable injury. Id. The Court will limit its analysis, however, to State's Attorney Lawyer's reliance on Minnesota Chapter, which is misplaced.

[¶ 25]   Unlike Minnesota Chapter, this case involved an actual investigation into the potential violation of the challenged statute and a threat from an investigator that the law will be enforced. Coupled with the fact that the State's Attorney's office has prosecuted under this statute before, it would lead an objectively reasonable person to engage in self-censorship of their political speech lest they come under investigation again for making statements subject to N.D.C.C. § 16.1-10-04. See Care Committee I, 638 F.3d at 627. In short, for the same reasons State's Attorney Lawyer will not be afforded Eleventh Amendment immunity at this time, the Court finds there is standing for Plaintiffs to pursue their claims against State's Attorney Lawyer.

## CONCLUSION

[¶ 26]   Accordingly, because General Wrigley, Director Binstock, and the Ethics Commission are entitled to sovereign immunity under the Eleventh Amendment against Plaintiffs claims, their Motions to Dismiss are **GRANTED**. Plaintiffs' Claims against General Wrigley, Director Binstock, and the Ethics Commission are, therefore, **DISMISSED without prejudice**. As to State's Attorney Lawyer's Motion to Dismiss, it is **DENIED**.

- 13 -

[¶ 27]  **IT IS SO ORDERED.**

DATED April 30, 2026.

Daniel M. Traynor, District Judge
United States District Court